**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BABAESU BEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-00328** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CO I HOLT, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss Plaintiff's complaint filed pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 11.) For the reasons set forth

below, the Court will grant in part and deny in part the motion.

**I.    BACKGROUND**

**A.    Procedural Background**

Plaintiff Babaesu Bey ("Plaintiff") is a state prisoner in the custody of the Pennsylvania

Department of Corrections ("DOC") and is currently incarcerated at State Correctional

Institution Rockview in Bellefonte, Pennsylvania. On February 23, 2023, Plaintiff commenced

the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"),

asserting violations of his constitutional rights while incarcerated at State Correctional Institution

Mahanoy ("SCI Mahanoy") in Frackville, Pennsylvania. (Doc. No. 1.) In his complaint,

Plaintiff names as Defendants the DOC, George Little ("Little"), a former secretary of the DOC,

and the following individuals, all of whom worked at SCI Mahanoy during the period of time

relevant to Plaintiff's claims: Superintendent Mason ("Mason"), the superintendent; Deputy

Stetler ("Stetler"), Deputy Banta ("Banta"), and Deputy White ("White"), deputy

superintendents; Captain Reed ("Reed"), the captain of security; Lt. Cobion ("Cobion"), a

security officer; LPM Chuma ("Chuma"), a lieutenant program manager; Program Manager

Macknight ("Macknight"), a program manager; Unit Managers Tobias ("Tobias") and Kellner ("Kellner"), unit managers; Lt. Lotwick ("Lotwick"); a lieutenant; CO I Holt ("Holt"), a corrections officer; and Ann Verbyla ("Verbyla"), a staff assistant (collectively, "Defendants"). (Id. at 1, 3–5.)

On May 4, 2023, the Court, inter alia, deemed the complaint filed and directed service of the complaint upon Defendants.  (Doc. No. 7.)  On June 7, 2023, counsel entered his appearance for Defendants and waived service on their behalf.  (Doc. Nos. 9, 10.)  Shortly thereafter, Defendants filed a motion to dismiss Plaintiff's complaint and supporting brief.  (Doc. Nos. 11, 12.)  Following an extension of time (Doc. Nos. 13, 14), Plaintiff filed an opposition brief (Doc. No. 15).  As reflected by the Court's docket, Defendants have not filed a reply brief, and the time period for doing so has passed.  Thus, Defendants' motion is ripe for the Court's resolution.

**B.     Factual Background**

In his complaint, Plaintiff sets forth the following allegations.  On October 28, 2022, Defendant Holt walked up to Plaintiff, grabbed his left wrist, and twisted his arm back, "as if he was attempting to take [Plaintiff] down."  (Doc. No. 1 at 6.)  Defendant Holt then let his arm go and "verbally assaulted" him.  (Id.)  This caused "serious injury" to his left wrist and shoulder. (Id.)  Two (2) days later, on October 30, 2022, Defendant Cobion began "initiating retaliatory actions against [Plaintiff] because [he] reported the abuse of staff."  (Id.)  Defendant Cobian "filed a report[, thereby] putting [Plaintiff] under investigation until she could find something to charge [him] with."  (Id.)

In connection with these allegations, Plaintiff asserts that Defendant Mason "promotes an atmosphere of lawlessness and zero accountability at SCI Mahanoy" and that Defendant Mason knew Plaintiff did not violate any "rule" and "was only placed in the RHU because [he] reported

2

being assaulted by staff." (<u>Id.</u> at 7.)  Plaintiff further asserts that Defendant Reed "was presented with the fact that [he] was reporting being assaulted by staff and approved the report submitted by [Defendant] Cobion to place [him] in the RHU until something could be found to charge [him] with." (<u>Id.</u>)

In addition, Plaintiff avers that, on four (4) separate occasions in November 2022, members of the Program Review Committee ("PRC") met and determined that, because Plaintiff reported being assaulted by a staff member, his confinement in the RHU and Defendant Cobian's "search for something to charge [him] with were justified and warranted." (<u>Id.</u> at 8–9.)  Plaintiff identifies the PRC members as Defendants White, Macknight, Tobias, Lotwick, Banta, Stetler, Kellner, and Chuma. (<u>Id.</u>)  Plaintiff also avers that Defendants Little and DOC "did not have policies in place to protect [him] from retaliation after [he] reported being assaulted by a staff member." (<u>Id.</u> at 9.)  Defendant Verbyla transferred Plaintiff "to a prison facility farther away from [his] family and loved ones." (<u>Id.</u>)

As for relief, Plaintiff requests that he be transferred back to a prison closer to his family and friends and that he be provided the opportunity to file criminal assault charges against Defendant Holt. (<u>Id.</u> at 10.)  Plaintiff also requests that the Court issue an order directing the DOC to "implement protections for those who report being abused by staff to prevent retaliation in these matters." (<u>Id.</u> at 11.)  And, finally, Plaintiff seeks monetary damages. (<u>Id.</u> at 10.)

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

III.     **DISCUSSION**

A.     **Defendant DOC**

In his complaint, Plaintiff names the DOC as a Defendant.  (Doc. No. 1 at 5.)  However, in their motion to dismiss and supporting brief, Defendants argue that the DOC has Eleventh Amendment immunity and is not considered a "person" for purposes of claims asserted under Section 1983.  (Doc. No. 12 at 4, 16.)

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty").  It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. C.S.A. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity).

This Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state."  See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).  As such, Defendant DOC is entitled to the same Eleventh Amendment immunity that the Commonwealth of Pennsylvania enjoys.  See 71 P.S. § 61(a); Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state

sovereign immunity prohibit[ed]" the plaintiff's Section 1983 claims against the DOC defendants, including the DOC itself).

Additionally, in order for Plaintiff to state a claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights. See Rehberg v. Paulk, 566 U.S. 356, 361 (2012). However, an administrative department, such as the DOC, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute. See 71 P.S. § 61 (providing that the DOC is an "administrative department[ ]" within the Commonwealth of Pennsylvania); see also Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of that statute); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissing Section 1983 claims against the DOC and one of its institutions because they were entitled to Eleventh Amendment immunity and "are not persons subject to suit under" Section 1983).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted against the DOC. As such, any Section 1983 claims that Plaintiff has asserted against this Defendant will be dismissed, and the Court will direct the Clerk of Court to terminate the DOC from the caption of this case.

## B.    Supervisory Liability

Plaintiff's complaint names Little, a former secretary of the DOC, and Mason, the superintendent of SCI Mahanoy, as Defendants. (Doc. No. 1 at 3, 5.) However, in their motion to dismiss and supporting brief, Defendants argue that Plaintiff's complaint fails to allege how these two (2) Defendants, as supervisory officials within the DOC, had any personal involvement in this Section 1983 action. (Doc. No. 12 at 10–12.) The Court agrees.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

It is well-settled that in a Section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  See Iqbal, 556 U.S. at 676.  Thus, in order to state a claim under Section 1983, a plaintiff must sufficiently allege that the defendants had personal involvement in the act or acts that the plaintiff claims violated his constitutional rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, a plaintiff may not rely on respondeat superior, see id. (citation omitted), which is a theory of

8

liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

In the context of Section 1983, the Third Circuit has recognized two (2) theories of supervisory liability. See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." See id. (alteration in original) (citation and internal quotation marks omitted); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Under the other theory, a supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, Plaintiff's complaint alleges that Defendant Mason "promotes an atmosphere of lawlessness and zero accountability at SCI Mahanoy" and that Defendant Mason knew that Plaintiff did not violate any "rule" and "was only placed in the RHU because [he] reported being assaulted by staff." (Doc. No. 1 at 7.) Additionally, Plaintiff's complaint alleges that Defendant Little "did not have policies in place to protect [Plaintiff] from retaliation after [he] reported being assaulted by a staff member." (Id. at 9.) Ultimately, the Court finds that these allegations fail to establish either theory of supervisory liability against Defendant Mason or Defendant Little.

Indeed, there are no factual allegations that they participated, directed, or knew of and acquiesced in Defendant Holt's alleged use of excessive force, Defendant Cobian's alleged retaliation, or the PRC's determination that Plaintiff's placement in the RHU was appropriate. There are likewise no factual allegations that Defendants Mason or Little were deliberately indifferent to the consequences of a policy, practice, or custom that they had established and maintained. Moreover, the law is clear that Plaintiff's broad and conclusory allegations against these Defendants are not entitled to the assumption of truth. See Iqbal, 556 U.S. at 679 (stating further that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (explaining that while a court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)).

Accordingly, the Court concludes that Plaintiff's complaint fails to allege personal involvement on the part of Defendants Mason and Little. As such, the Court will grant Defendants' motion on this basis, and the Court will dismiss Plaintiff's Section 1983 claims against Defendants Mason and Little.

### C. First Amendment Retaliation

In his complaint, Plaintiff asserts a First Amendment retaliation claim against Defendant Cobion. (Doc. No. 1 at 6.) However, in their motion to dismiss and supporting brief, Defendants argue that the Court should dismiss Plaintiff's First Amendment retaliation claim for failure to state a claim upon which relief can be granted. (Doc. No. 12 at 4, 7–10.) The Court is unpersuaded.

10

In order to state a First Amendment retaliation claim, a plaintiff must allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). However, even if a plaintiff states a prima facie case of retaliation, "prison officials may still prevail if they establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See id. (citation and internal quotation marks omitted).

As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. See Watson, 834 F.3d at 422 (reiterating its prior holding that a prisoner-plaintiff engages in constitutionally protected activity when he files a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

With regard to the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]" See Mitchell, 318 F.3d at 530 (alterations in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015), (explaining that an adverse action must be "sufficient to deter a person of ordinary

firmness from exercising his constitutional rights . . . " (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  See Watson, 834 F.3d at 422.  The plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted).

Here, Plaintiff's complaint claims that, on October 28, 2022, Defendant Holt physically and verbally assaulted him and that, just two (2) days later, on October 30, 2022, Defendant Cobion began "initiating retaliatory actions" against him "because [he] reported the abuse of staff."  (Doc. No. 1 at 6.)  In support, Plaintiff alleges that Defendant Cobian filed a report that "put[ ] [Plaintiff] under investigation" so that she could charge him with something.  (Id.) Plaintiff further alleges that, as a result of Defendant Cobion's report, he was housed in the RHU.  (Id. at 7.)  Thus, based upon these allegations, the Court finds that Plaintiff's complaint sufficiently alleges that he engaged in constitutionally protected conduct when he reported staff abuse, that he suffered an adverse action when he was subsequently housed in the RHU, and that his constitutionally protected conduct was a substantial or motivating factor in Defendant Cobion's decision to issue the subject report, which placed Plaintiff in the RHU.

In their motion to dismiss and supporting brief, Defendants argue that courts in this circuit have repeatedly rejected retaliation claims against one defendant based upon a grievance filed against another defendant, reasoning that a plaintiff cannot establish a causal connection against a defendant who was not named or involved in the underlying grievance. (Doc. No. 12 at 9.) The Court, however, rejects this argument for several reasons. First, this case is at the pleading stage, not the summary judgment stage, and, therefore, the Court must accept the allegations in Plaintiff's complaint as true and construe them in the light most favorable to him. As a result, the Court must accept that Defendant Cobion filed the report against Plaintiff because he reported staff abuse. Second, Plaintiff need not specifically name each Defendant in a prior report of staff abuse (i.e., a grievance) in order to satisfy the requirements that he engaged in constitutionally protected activity and that there was a retaliatory motive between such activity and the adverse action (i.e., a causal connection). Otherwise, a third party could—essentially— carry out the adverse actions on behalf of those who are named as wrongdoers in a grievance. Third, Defendants have not cited to any precedential opinion from the Third Circuit to support their argument. (Doc. No. 12 at 9 (citing primarily to federal district court cases in the Middle and Western Districts of Pennsylvania).)[1]

Accordingly, for all of these reasons, and in light of the lack of precedential authority on this issue, the Court is not persuaded by Defendants' argument that Plaintiff's complaint fails to allege a causal connection between Plaintiff's constitutionally protected conduct and Defendant

---

[1] The Court recognizes that one of the cases cited by Defendants is Kendrick v. Hann, 19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021) (Kane, J.). (Doc. No. 12 at 9.) However, the Court notes that, in Kendrick, the defendants had filed a motion for summary judgment, as opposed to Defendants' instant motion to dismiss. The Court further notes that, to the extent that the instant discussion of Plaintiff's retaliation claim conflicts with the Court's discussion in Kendrick, the Court departs from such discussion.

Cobion's alleged adverse actions.  The Court will, therefore, deny Defendants' motion to the extent that they seek dismissal of Plaintiff's First Amendment retaliation claim against Defendant Cobion.

Before addressing Plaintiff's Eighth Amendment claim, the Court notes that it does not read Plaintiff's complaint as asserting a First Amendment retaliation claim against any of the other named Defendants.  To the extent that the Court has misunderstood Plaintiff's complaint, the Court instructs Plaintiff that he must set forth the legal and factual support for any such retaliation claims in his amended complaint, should he elect to file one.

### D.      Eighth Amendment Excessive Use of Force

In his complaint, Plaintiff appears to assert an Eighth Amendment excessive use of force claim against Defendant Holt.  (Doc. No. 1 at 6.)  In their motion to dismiss and supporting brief, Defendants argue that this claim should be dismissed for failure to state a claim upon which relief can be granted.  (Doc. No. 12 at 4, 14–15.)

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  "The Supreme Court has interpreted this prohibition . . . to bar prison officials from using excessive force against inmates[.]"  Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (citing Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)).  Additionally, the Supreme Court has explained that, in order to demonstrate that a prison defendant has violated the Eighth Amendment, a plaintiff must establish two (2) elements: a subjective and an objective element. See Hudson, 503 U.S. at 8.  First, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind[,]" see Wilson v. Seiter, 501 U.S. 294, 297 (1991), and

14

second, the plaintiff must show that the defendant's conduct was objectively "sufficiently serious[.]"  See id. at 298.

Where a prison defendant is alleged to have used excessive force in violation of the Eighth Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  See Hudson, 503 U.S. at 7; Chavarriaga, 806 F.3d at 231 (explaining that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,]" and "[t]his is true whether or not significant injury is evident").  In conducting this inquiry, there are several factors that a court must consider in determining whether a prison defendant has used excessive force against a prisoner, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"  See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

In addition, the pertinent inquiry for the objective element is whether the prison defendant's actions were "harmful enough," see Hudson, 503 U.S. at 8, or "sufficiently serious," see Wilson, 501 U.S. at 298.  "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."  Wilkins, 559 U.S. at 37 (citation omitted).  As a result, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  See Hudson, 503 U.S. at 9–10 (quoting Whitley, 475 U.S. at 327).  Instead, the Eighth Amendment prohibits the use of force that

offends "contemporary standards of decency[,]" regardless of whether "significant injury is evident[;]" although, the extent of injury may provide "some indication of the amount of force applied" or "whether the use of force could plausibly have been thought necessary in a particular situation." See Wilkins, 559 U.S. at 37 (citation, internal citation, and internal quotation marks omitted).

Here, Plaintiff's complaint alleges that: on October 28, 2022, Defendant Holt grabbed his left wrist and twisted his arm back, "as if he was attempting to take [Plaintiff] down[;]" and Defendant Holt then let Plaintiff's arm go and "verbally assaulted" him. (Doc. No. 1 at 6.) In connection with these allegations, Plaintiff claims that he suffered "serious injury" to his left wrist and shoulder. (Id.) Having reviewed these allegations, the Court agrees with Defendants that they fail to set forth the circumstances surrounding this alleged encounter such that the Court could infer either that the use of force was applied (1) in a good-faith effort to maintain or restore discipline or (2) maliciously and sadistically to cause Plaintiff harm. Indeed, Plaintiff's complaint does not set forth any factual allegations concerning: the circumstances of his interactions with Defendant Holt before the alleged use of force was applied; what Plaintiff was doing when the alleged use of force was applied; whether Defendant Holt stated any reason for the alleged use of force or whether Defendant Holt made any efforts to temper the severity of his alleged use of force; and the context for the "serious injury" that Plaintiff suffered, including the extent of that injury and/or any medical care or treatment that he received.

In light of this lack of clarity in Plaintiff's complaint, the Court heeds the Supreme Court's admonition that not all uses of force amount to a constitutional violation, see Wilkins, 559 U.S. at 37, and not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Hudson, 503 U.S. at 9; see also Graham v. Connor, 490 U.S. 386, 396 (1989)

16

(stating that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" amounts to a constitutional violation (internal citation and quotation marks omitted)).  Additionally, the Court recognizes that "[r]unning a prison is an inordinately difficult undertaking, . . . and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face[.]"  See Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015) (citation, internal citation, and internal quotation marks omitted).  As a result, officers are often required to make split-second decisions in uncertain and rapidly evolving circumstances.  See id.

Thus, until Plaintiff expands on the circumstances surrounding Defendant Holt's alleged use of excessive force, or describe his alleged "serious injury" in detail, the Court concludes that Plaintiff's complaint fails to state an Eighth Amendment excessive use of force claim upon which relief can be granted at this time.  As such, the Court will grant Defendants' motion, and dismiss this claim.

### E.    Fourteenth Amendment Due Process

Although unclear, Plaintiff appears to assert a violation of his due process rights under the Fourteenth Amendment in connection with his placement in the RHU.  (Doc. No. 1 at 6–9.)  In their motion to dismiss and supporting brief, Defendants argue that, to the extent Plaintiff's complaint asserts a due process claim, such claim should be dismissed for failure to state a claim upon which relief can be granted.  (Doc. No. 12 at 12–13.)  The Court agrees.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV, § 1.  "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components."  See

<u>Evans v. Sec'y Pennsylvania Dep't of Corr.</u>, 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted).  The substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See <u>Boyanowski v. Cap. Area Intermediate Unit</u>, 215 F.3d 396, 399 (3d Cir. 2000).  And the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property."  See <u>Evans</u>, 645 F.3d at 662.

Here, Plaintiff's complaint alleges that, after Defendant Cobion issued her report, he was placed in the RHU and various Defendants, including members of the PRC, met and determined that his confinement in the RHU was "warranted and justified[.]"  (Doc. No. 1 at 6–9.)  Plaintiff's complaint, however, does not offer any further context to expand on these allegations.  That said, the Court construes Plaintiff's complaint as asserting a due process claim based upon an alleged deprivation of a "liberty" interest under the Fourteenth Amendment.

As noted above, the procedural component of the Due Process Clause "governs the manner in which the government may infringe upon an individual's life, liberty, or property."  See <u>Evans</u>, 645 F.3d at 662.   The Court recognizes that prisoners, such as Plaintiff, "are not completely deprived of the protections of the Due Process Clause simply because they are prisoners."  See <u>id.</u>  Thus, "[p]rocedural protections must be afforded to them before they are stripped of the rights they still retain while incarcerated."  See <u>id.</u> at 662–63 (citation omitted).

The Third Circuit has explained that:

> a prisoner holds a liberty interest triggering due process protection in two instances: when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." <u>Renchenski v. Williams</u>, 622 F.3d 315, 325 (3d Cir. 2010) (internal quotation marks and citation omitted).

See Evans, 645 F.3d at 663.   The Third Circuit has characterized the first instance as a "'so-called state-created liberty interest'" and the second instance as a "'so-called independent due process liberty interest.'"   See id. (quoting Renchenski 622 F.3d at 325).

### 1.    Independent Due Process Liberty Interest

With respect to independent due process liberty interests, the United States Supreme Court has held that, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."   See Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, an independent due process liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."   See Renchenski, 622 F.3d at 325.  Some examples of such severe changes in conditions of confinement include: "forced administration of antipsychotic medication, Washington v. Harper, 494 U.S. 210, 221–222[ ] (1990), or involuntary transfer to a mental hospital, Vitek v. Jones, 445 U.S. 480, 492[ ] (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, Renchenski, 622 F.3d at 326."   See Evans, 645 F.3d at 665.

Here, the Court is unable to discern an independent due process liberty interest in Plaintiff's complaint.  Indeed, Plaintiff's allegations do not show that, as a result of Defendant Cobion's report and Plaintiff's placement in the RHU, there has been a severe change to the conditions or degree of his confinement.  See Evans, 645 F.3d at 665 (stating that "there is no indication that anything changed relating to [plaintiff's] conditions of confinement, let alone anything of a magnitude comparable to the following examples: the forced administration of

19

antipsychotic medication, involuntary transfer to a mental hospital, or for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy).  Moreover, the Third Circuit has explicitly stated that, "[b]ecause disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause."  See Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (alterations in original) (citations and internal quotation marks omitted); see also Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (stating, in the context of an independent due process liberty interest, that inmates transferred to a particular management unit "were not subjected to confinement that exceeded the sentences imposed upon them or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged").

Thus, Plaintiff's complaint does not assert allegations that he was subject to conditions of confinement that exceeded his sentence or that otherwise violated the United States Constitution. As such, the Court concludes that Plaintiff's complaint has not plausibly stated that he was deprived of an independent due process liberty interest.

## 2. State-Created Liberty Interest

With respect to state-created liberty interests, the United States Supreme Court has held that these types of interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted); Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (stating

that, "[a]fter <u>Sandin</u>, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'" (quoting <u>Sandin</u>, 515 U.S. at 484)).

Additionally, when courts are determining whether a state-created liberty interest exists, they are not to "compare the prisoner's own life before and after the deprivation." <u>See</u> <u>Powell v. Weiss</u>, 757 F.3d 338, 344 (3d Cir. 2014). Instead, "[t]he baseline for determining what is atypical and significant—the ordinary incidents of prison life—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." <u>See</u> <u>id.</u> (citations and internal quotation marks omitted).

Here, the Court is unable to discern a state-created liberty interest in Plaintiff's complaint. The allegations in Plaintiff's complaint do not show that he was subject to an atypical and significant hardship in relation to the ordinary incidents of prison life. Indeed, the Court cannot say that an inmate's placement in the RHU, by itself, amounts to the requisite level of hardship. In addition, Plaintiff's complaint has not offered any context for the conditions of his confinement in the RHU or the duration of his placement there. Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint does not plausibly allege that he was deprived of a state-created liberty interest in connection with his placement in the RHU.

Because Plaintiff's complaint fails to plausibly allege that he was deprived of an independent due process liberty interest or a state-created liberty interest, the Court concludes that his complaint fails to state a Fourteenth Amendment procedural due process claim upon which relief can be granted. The Court will, therefore, dismiss this claim.

### F.        Rule 8 of the Federal Rules of Civil Procedure

In addition to the foregoing arguments, Defendants also contend that Plaintiff's complaint generally fails to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure.  (Doc. No. 12 at 4, 5–7.)  Rule 8 sets forth the general rules of pleading.  See Fed. R. Civ. P. 8.  Rule 8(a) requires a pleading to contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  See Fed. R. Civ. P. 8(a)(2).  In addition, Rule 8(d)(1) requires that "[e]ach allegation . . . be simple, concise, and direct."  See Fed. R. Civ. P. 8(d)(1).  Generally speaking, these Rules require a plaintiff to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This pleading standard requires more than legal labels and conclusory assertions: a complaint must include enough facts "to raise a right to relief above the speculative level[.]"  See Twombly, 550 U.S. at 555 (citations omitted).

Here, although Plaintiff's complaint is concise, the Court agrees with Defendants that it does not separate into a different count each cause of action that Plaintiff seeks to assert.  This is problematic where, as here, Plaintiff's complaint names fifteen (15) different individuals but does not identify what claim or claims he seeks to assert against each and every individual.  In addition, the Court agrees with Defendants that Plaintiff's complaint, at times, contains broad and generalized allegations, making it unclear which federal statutory or constitutional law Defendants are alleged to have violated.  In light of these pleading deficiencies, the Court agrees with Defendants that Plaintiff's complaint is wanting of clarification on Plaintiff's claims and the grounds upon which those claims rest.

### G.     Leave to Amend

The final issue before the Court is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman, 371 U.S. at 182 (citation and internal quotation marks omitted).  However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.

In accordance with this standard, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above.  Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the complaint or any other document already filed.  The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

However, if Plaintiff would, instead, like to proceed on his complaint as it currently stands, the Court will permit him to do so by filing a letter stating the same.

**IV.    CONCLUSION**

Accordingly, for all of the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's complaint.  (Doc. No. 11.)  In addition, the Court will grant Plaintiff leave to file an amended complaint.  An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania